UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BRIAN MARTY BODER,   Case No. 21-CV-2716 (PJS/LIB)

          Plaintiff,

v.   ORDER

FRASER SHIPYARDS, LLC,

          Defendant.

Brian Marty Boder, pro se.

Charles G. Frohman, MASLON LLP, for defendant.

This matter is before the Court on defendant Fraser Shipyards, LLC's ("Fraser's") motion to dismiss. ECF No. 14. In a Report and Recommendation ("R&R") dated November 4, 2022, Magistrate Judge Leo I. Brisbois recommended that the complaint be dismissed for lack of subject-matter jurisdiction and that Fraser's motion be denied as moot. Both plaintiff Brian Boder and Fraser have objected to the R&R, and the Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Based on that review, the Court agrees with Judge Brisbois that Boder has not established that this Court can exercise diversity jurisdiction. That is of little consequence, however, as Boder's breach-of-contract claim is "substantially dependent on analysis of a collective-bargaining agreement," *Int'l Bhd. Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987), and thus that claim is completely preempted by Section 301 of

the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. A claim that is completely preempted "is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). For that reason, this Court finds that it has jurisdiction over Boder's claim under 28 U.S.C. § 1331.

Unfortunately for Boder, however, the fact that his claim is completely preempted also means that the Court is required to dismiss it. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). The Court therefore rejects the R&R, grants Fraser's motion, and dismisses Boder's claim without prejudice.

I. BACKGROUND

Boder brought this breach-of-contract action against Fraser, his former employer, on December 21, 2021. *See* Compl., ECF No. 1. Some of the details of Boder's claim are unclear, but Boder has broadly alleged that Fraser breached at least one oral agreement between the parties when Fraser fired him in July 2020. *See* Compl. ¶¶ 7–11.[1] In his initial complaint, and throughout these proceedings, Boder has asserted that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332. Specifically, Boder has

---

[1] Boder's complaint also briefly alludes to Fraser's "negligence." Compl. 4. The complaint does not make clear whether it is asserting a separate negligence claim, nor does the complaint explain how Fraser acted negligently. The Court will address Boder's possible negligence claim at the end of this order.

maintained that he is a citizen of Minnesota and that Fraser is a citizen of Wisconsin. *See* Compl. ¶¶ 3, 5.

In response to a January 10, 2022 order to show cause why this case should not be transferred to the Western District of Wisconsin [ECF No. 3], Boder provided his Minnesota driver's license number as evidence that he resides in Minnesota. *See* Plf.'s Resp. to Order to Show Cause 2, ECF No. 4. In the same filing, Boder also stated that he "would like the court to consider a motion to amend the original statement of claims," and he attached what he called a "Statement of Claim" containing factual allegations beyond those contained in the original complaint. *See id.* at 2–7.[2] Boder's filing came a day after the deadline to amend his complaint as a matter of course under Fed. R. Civ. P. 15(a)(1), but Fraser did not object to the proposed amendment. *See* Def.'s Resp. to Plf.'s Mot. Amend, ECF No. 13. Judge Brisbois never formally accepted the Statement of Claim as an amended complaint, but the parties have proceeded as though the Statement of Claim either supplemented or superseded the allegations in the original complaint, and this Court will do likewise. *See e.g.*, Mem. Supp. Mot. Dismiss 2, ECF No. 16.

---

[2]Because neither Boder nor the Clerk of Court filed Boder's separately paginated Statement of Claim as an exhibit to his response to the show-cause order, the Court will cite to the ECF pages and the numbered paragraphs of that document.

The Statement of Claim brings Boder's breach-of-contract claim into sharper focus. Boder alleges that he worked for Fraser under a "seasonal union employment contract" that normally lasted from January to May, at which point he would typically be laid off until the following year. Plf.'s Resp. to Order to Show Cause 4–5, ¶¶ 1, 5, 9. In May 2019, however, Boder and Fraser allegedly entered into an oral agreement—an agreement that was separate from the seasonal union contract—under which Boder agreed that, instead of being laid off in May, he would stay on indefinitely to help with a non-seasonal project. *See id.* at 4 ¶¶ 1–2.

In January 2020, while Boder was still allegedly working "beyond his seasonal union employment contract" and pursuant to the May 2019 oral agreement, *id.* at 4 ¶ 5, Boder made a request of Fraser: Boder asked Fraser to either (1) "review his Union pay scale hourly wage for a wage increase to Union scale (approx. $28.00/hr)" or (2) allow him to return to seasonal employment, which "would have included a layoff in the normal months of June-December." *Id.* at 4 ¶ 3. Somewhat confusingly, Boder alleges that his request constituted a second oral agreement with Fraser—an agreement to either increase his pay or return him to the seasonal schedule[3]—even though he also complains that Fraser did not respond to his request. (The Court does not understand how an agreement could have been created when Fraser never responded to Boder's

---

[3]To avoid getting caught up in the confusing terminology of a first or second oral agreement, the Court will treat this as an alleged term of the May 2019 agreement.

request.)  In any event, after hearing nothing about his request, Boder asked for and received a layoff in March or April 2020.  *See id.* at 5 ¶ 6.  Boder says that one feature of the May 2019 agreement was that he would be "allowed to receive a layoff at any point" because he "was already above and beyond his seasonal union contract."  *Id.*

If the Court understands the complaint correctly, Boder does not allege that, up to this point, Fraser breached any agreement or otherwise acted unlawfully.  According to Boder, though, things went wrong when Fraser attempted to recall Boder to work in July 2020.  *See id.* at 5 ¶ 7.  Fraser alleges that Boder was required under the collective-bargaining agreement ("CBA") with his union to return to work.  According to Boder, however, in July 2020 he was not covered by the CBA; instead, he was still employed under the May 2019 oral agreement, and therefore he was permitted to (and did) decline to go back to work.  *See id.* at 5–6 ¶¶ 9–10.  Boder says that, after he declined to return to work, Fraser notified Wisconsin's unemployment agency that he had quit, which prompted the agency to cut off Boder's unemployment payments.  *See id.* at 6 ¶¶ 11–12.

Boder further alleges that, under the May 2019 agreement, Fraser was required to allow him to return to seasonal work in January 2021.  Fraser refused to do, however.  Boder concludes his Statement of Claim by alleging that Fraser has not responded to his requests for a copy of his original union contract and that he was never contacted by

any union representatives or "afforded any Union grievance processes." *Id.* at 6–7 ¶¶ 13–15.

Fraser now moves to dismiss Boder's complaint for failure to state a claim. In support of its motion, Fraser argues that (1) Boder's claim is preempted by Section 301 of the LMRA; (2) Boder's claim should be dismissed for failure to exhaust his grievance procedures; and (3) Boder's complaint fails to include sufficient factual material to state a claim for relief. *See* Mem. Supp. Def.'s Mot. Dismiss. In an order dated June 27, 2022, the Court referred the motion to Judge Brisbois. *See* Order, ECF No. 28.

Judge Brisbois held a hearing on Fraser's motion on September 1, 2022. At the beginning of the hearing, the parties and the Court agreed that diversity of citizenship provided the basis for federal jurisdiction over Boder's claims, but counsel for Fraser also mentioned that complete preemption under Section 301 of the LMRA may provide federal-question jurisdiction. *See* Hr'g Recording, 21:45–22:34, ECF No. 42. At the end of the hearing, after Judge Brisbois asked if Boder's contact information was still current, Boder stated that the address he listed on his initial complaint was only his mailing address, and that he actually lived in Superior, Wisconsin. *See* R&R 3, ECF No. 38.

That comment caused Judge Brisbois to be concerned about whether Boder and Fraser truly were citizens of different states, so he ordered the parties to file affidavits

attesting to Boder's place of residence when the events at issue occurred and when Boder filed his complaint. *See* Order, ECF No. 32. Unfortunately, Judge Brisbois did not order the parties to file affidavits attesting to *Fraser's* citizenship—which, as the Court describes below, remains unknown to this day.

Boder filed an affidavit in which he explained that, after being released from federal prison in 2015, Boder was subject to supervised release in the District of Minnesota—but after struggling to find housing in Minnesota, he sought and received permission to move to Superior, Wisconsin. *See* Boder Aff. 1, ECF No. 33. Boder explained in his affidavit that he did not intend to stay in Wisconsin, but his ability to return to Minnesota even after the expiration of his probation in 2020 was hampered by a lack of available housing and by financial challenges. *See* Boder Aff. 2. For its part, Fraser filed an affidavit confirming that it had a Superior address on file for Boder when it terminated his employment.[4] *See* Follett Decl. ¶ 3, ECF No. 35.

After finding that Boder was a citizen of Wisconsin—and after assuming (despite a lack of evidence in the record) that Fraser was also a citizen of Wisconsin— Judge Brisbois entered an R&R on November 4, 2022 recommending that this action be

---

[4]The Follett Declaration also noted that Wisconsin's unemployment agency, in corresponding with Fraser, referred to the Minnesota address that Boder used on his initial complaint in this action. *See* Follett Decl. ¶ 4.

dismissed for lack of subject-matter jurisdiction and that Fraser's Rule 12(b)(6) motion be denied as moot. *See* R&R, ECF No. 38.

Both parties have objected to the R&R. Boder largely seems to take issue with the manner in which Judge Brisbois raised subject-matter jurisdiction and concluded that it was lacking, *see* Plf.'s Obj. to R&R, ECF No. 39, though Boder has also lodged some complaints about the Court's level of communication with him. *See* Plf's Obj. to R&R, ECF No. 40. Meanwhile, Fraser takes issue with the R&R for not addressing Section 301 preemption as a basis for federal-question jurisdiction (and thus for not ruling on the merits of Fraser's motion). *See* Def.'s Obj. to R&R, ECF No. 43.

## II. ANALYSIS

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Du Bois v. Bd. of Regents*, 987 F.3d 1199, 1202 (8th Cir. 2021). But in deciding whether it has subject-matter jurisdiction, a court may look to "matters outside the pleadings, such as testimony and affidavits." *See Branson Label,*

*Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015) (quoting *Menchacha v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

*B. Subject Matter Jurisdiction*

"In every federal case, the threshold requirement is jurisdiction because federal courts are courts of limited jurisdiction." *Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 838 (8th Cir. 2022) (cleaned up). A federal court's jurisdiction is typically based on diversity of citizenship under 28 U.S.C. § 1332 (commonly referred to as "diversity jurisdiction") or the presence of a federal question under 28 U.S.C. § 1331 (commonly referred to as "federal-question jurisdiction").

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Wagstaff & Cartmell*, 40 F.4th at 838 (quoting *Nuevos Destinos, LLC v. Peck*, 999 F.3d 64, 646 (8th Cir. 2021)). Under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," even if neither party has raised the issue. *See Williams v. Rogers*, 49 F.2d 513 (8th Cir. 1971) ("[W]here jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte.").

Under 28 U.S.C. § 1332, federal courts have jurisdiction over actions "between citizens of different States" when the amount in controversy is over $75,000.  *Id.* § 1332(a)(1).  Judge Brisbois concluded that Boder and Fraser are both citizens of Wisconsin and therefore § 1332 does not confer subject-matter jurisdiction over this lawsuit.  The Court agrees that Boder has not established the existence of diversity jurisdiction, although the Court's analysis differs from Judge Brisbois's.

 "The plaintiff has the burden of proving subject matter jurisdiction."  *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016).  To meet his burden, Boder must point to evidence in the record that establishes (1) the state of which he is a citizen and (2) the state (or states) of which Fraser is a citizen.

The Court agrees with Judge Brisbois that the evidence in the record shows that Boder is a citizen of Wisconsin.  The citizenship of a natural person depends on his "domicile."  *Wagstaff & Cartmell*, 40 F.4th at 839 ("For purposes of federal jurisdiction, 'domicile' and 'citizenship' are synonymous terms." (quoting *Eckerberg v. Inter-State Studio & Publ'g Co.*, 860 F.3d 1079, 1086 (8th Cir. 2017))).

> To establish domicile, an individual must both be physically present in the state and have the intent to make his home there indefinitely.  Intention to remain there permanently, however, is not necessary.  Once an individual has established his domicile, he remains domiciled there until he legally acquires a new domicile.

*Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990).  In other words, an individual can have only one domicile—and thus only one citizenship—for purposes of diversity jurisdiction.

The affidavit that Boder filed establishes that Wisconsin is his domicile.  He has lived there for about seven years, and although he says that he would like to move back to Minnesota someday, he has no specific plan to do so.  Thus, Boder is "physically present" in Wisconsin and intends to stay there "indefinitely," even though he does not intend to stay there "permanently."  *Yeldell*, 913 F.2d at 537.  The fact that Boder still carries a Minnesota driver's license does not make him a citizen of Minnesota for purposes of § 1332.  Boder has lived, worked, and (at times) collected unemployment benefits in Wisconsin for the better part of a decade, and he does not have a concrete plan to move to Minnesota in the foreseeable future.  For purposes of § 1332, he is a citizen of Wisconsin.

The problem is that the record contains no evidence about the citizenship of *Fraser*.  Fraser is a limited liability company.  "[F]or purposes of diversity jurisdiction, a limited-liability company ('LLC') takes the citizenship of all of its members and 'sub-members' and 'sub-sub-members.'"  *Key Enters., LLC v. Morgan*, No. 12-CV-2628 (PJS/JSM), 2013 WL 353911, at *1 (D. Minn. Jan. 29, 2013); *see also E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 927, 975 (8th Cir. 2015).  Nothing in the record even *identifies* the

-11-

members of Fraser, much less identifies the citizenship of each of those members.  On this record, then, Boder cannot meet his burden of showing that this Court has diversity jurisdiction over his lawsuit.

That is not the end of the matter, however.  Under 28 U.S.C. § 1331, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Judge Brisbois noted that Boder has not brought any claims under federal law.  *See* R&R 6 n.1.  That is true, but Judge Brisbois's analysis did not go far enough, as he failed to address whether the doctrine of "complete preemption" nevertheless creates federal-question jurisdiction over Boder's state-law claim.

More often than not, preemption and jurisdiction are separate issues, but that is not true with respect to "complete" preemption, which is something different from "ordinary" preemption.  "Ordinary preemption is a federal defense that exists where a federal law has superseded a state law claim." *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012) (citation omitted).  The defense can be "applied in situations where a state statute directly conflicts with federal law, . . . or in limited circumstances where 'a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible.'"  *Id.* (quoting *Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc.*, 447 F.3d 1033, 1035 (8th Cir. 2006)).  Because ordinary

preemption is merely a *defense* to a state-law claim, ordinary preemption is "not a ground for federal jurisdiction." *Id.* (quoting *Evans v. Mo. Pac. R.R. Co.*, 795 F.2d 57, 58 (8th Cir. 1986)).

Under the doctrine of *complete* preemption, however, federal law "does not merely 'preempt' but goes further to 'absorb' state law on the subject." *Id.* at 250. The notion behind complete preemption is that in a few areas of law, federal law "wholly displaces" any state regulation so that any claim "within the scope" of that area, "even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank*, 539 U.S. 1, 9 (2003). "A conclusion that there is complete preemption effectively maintains that 'the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute.'" *MFA Petroleum Co.*, 701 F.3d at 247 (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). In those areas where complete preemption applies, there is essentially "no such thing as a state-law claim," *Beneficial Nat'l Bank*, 539 U.S. at 11, and any purported state-law claim is treated as "necessarily federal" for purposes of jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

"Although complete preemption is rare, it exists under § 301 of the LMRA." *Johnson v. Humphreys*, 949 F.3d 413, 415–16 (8th Cir. 2020); *see also Avco Corp. v. Aero Lodge No. 735*, 309 U.S. 557 (1968) (establishing doctrine of complete preemption in

context of LMRA § 301).  Section 301 governs "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185—in other words, suits for breaches of CBAs.  *See, e.g.*, *Boldt v. N. States Power Co.*, 904 F.3d 586, 590 (8th Cir. 2018); *Williams v. Nat'l Football League*, 582 F.3d 863, 873 (8th Cir. 2009).  But the "pre-emptive effect" of Section 301 extends "beyond suits alleging [CBA] violations," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985), and extends to any state-law claim that "depends upon the meaning of a collective-bargaining agreement."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988).  That wide preemptive umbrella ensures that only federal law fashioned by federal courts "governs the interpretation and application of collective-bargaining agreements."  *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990).

In the Eighth Circuit, "[t]he LMRA completely preempts . . . claims founded directly on rights created by collective-bargaining agreements and claims substantially dependent on analysis of a collective-bargaining agreement."  *Humphreys*, 949 F.3d at 416 (quoting *Boldt*, 904 F.3d at 590).  "A claim is substantially dependent on the CBA if it requires the interpretation of some specific provision of a CBA."  *Id.*  "Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."  *Allis-Chalmers*, 471 U.S. at 212.  "An otherwise independent claim

will not be preempted if the CBA need only be consulted during its adjudication." *Trs. of Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006).

"The proper starting point for determining whether interpretation of a CBA is required in order to resolve a particular state law claim is an examination of the claim itself." *Id.* at 331.  In this case, Boder's core claim is that he was unlawfully fired in July 2020 after he refused to return to work.  *See id.* ¶ 7.  Boder alleges that he was *not* covered by the CBA in July 2020—but instead he was working under the May 2019 oral agreement—and therefore he did not have to return to work. [5]  Fraser alleges that Boder *was* covered by the CBA in July 2020, and therefore he did have to return to work.  It is obviously impossible for the Court to resolve this claim without interpreting the CBA.  The only way that the Court can determine whether Boder was covered by the CBA in July 2020 is to interpret that CBA.

In sum, because Boder's claim for breach of the May 2019 agreement would require interpretation of the CBA, Boder's claim is preempted by Section 301, rendering

---

[5] Relatedly, Boder argues in his objection to the R&R that the CBA applied only to employees who were employed by Fraser for the season, and that separate oral agreements covered employees who were employed for the entire year.  *See* Plf.'s Obj. to R&R ¶¶ 1, 4,  ECF No. 39.  It is impossible for this Court to determine whether this argument is true without interpreting the language of the CBA.

the claim "necessarily federal." *Metro. Life Ins.*, 481 U.S. at 63.  The Court therefore has jurisdiction over that claim under 28 U.S.C. § 1331.

*C. Merits of Fraser's Motion*

Unfortunately for Boder, the fact that his claim is completely preempted under Section 301 means that this Court has no choice but to dismiss it.  "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be [1] treated as a § 301 claim . . . or [2] dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers*, 471 U.S. at 220.  It is not possible to treat Boder's claim as a "§ 301 claim" (that is, as a claim for breach of a CBA); the entire premise of his claim is that he was *not* covered by the CBA at the time that he was fired.  And thus, the only option available to the Court is to dismiss Boder's breach-of-contract claim "as pre-empted by federal labor-contract law."  *Id.*

As noted, it is not clear whether Boder intends to pursue a negligence claim in addition to his breach-of-contract claim.  If Boder does intend to pursue a negligence claim, that claim might also be completely preempted, but it is difficult to know.  The only reference to negligence in Boder's pleadings is the cryptic statement that "[t]he breach of oral agreement and negligence on Fraser Shipyard was during Covid-19 pandemic."  Compl. 4, ECF No. 1.  The Court cannot discern from that sentence exactly

what duty Fraser allegedly owed Boder or what conduct of Fraser's allegedly breached that duty. If this negligence claim is completely preempted, the Court would have to dismiss it, for the same reasons that the Court has to dismiss the breach-of-contract claim. If the claim is not completely preempted, the Court could theoretically exercise supplemental jurisdiction over it, but would opt not do so. *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 726–27 (8th Cir. 2008) (holding that, when a district court disposes of all federal claims before trial, the district court should generally decline to exercise supplemental jurisdiction over related state claims). In any event, the negligence claim is inadequately pleaded, as it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court will dismiss the negligence claim without prejudice for that reason.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court DECLINES TO ADOPT the November 4, 2022 Amended R&R [ECF No. 38]. IT IS HEREBY ORDERED THAT:

1.  Defendant's motion to dismiss [ECF No. 14] is GRANTED.

2.  Plaintiff's Complaint [ECF No. 1] is DISMISSED WITHOUT PREJUDICE. LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 28, 2023

s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court